UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOSEPH MALESZEWSKI,

     Plaintiff,

v.                               Case No. 09-13926

LIBERTY LIFE ASSURANCE           HONORABLE AVERN COHN
COMPANY OF BOSTON,

     Defendant.

_____/


**MEMORANDUM AND ORDER**
**DENYING PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT (Doc. No. 9)**
**AND**
**GRANTING DEFENDANT'S MOTION FOR ENTRY OF JUDGMENT (Doc. No. 11)**
**AND DISMISSING CASE**


I. Introduction

This is a benefits case under the Employment Retirement Income Security Act, 29 U.S.C. § 1001, et seq (ERISA). Plaintiff Joseph Maleszewski (Maleszewski) is suing defendant Liberty Life Assurance Company of Boston (Liberty Life). He claims that Liberty Life wrongfully denied his claim for long term disability (LTD) benefits under a group insurance policy (plan) held by his former employer, Comcast Corporation (Comcast) and issued and administered by Liberty Life. As will be explained, Liberty Life initially found Maleszewski was entitled to short term disability benefits and 12 months of LTD benefits. However, Liberty Life determined that after the 12 months, he was no longer disabled under the plan and therefore terminated his LTD benefits. Maleszewski says this decision was arbitrary and capricious.

The matter is before the Court on the parties' cross motions for entry of judgment. For the reasons that follow, Maleszewski's motion will be denied, Liberty Life's motion will be granted, and the case will be dismissed.

## II. Legal Standard  -  Motion for Entry of Judgment

In Wilkins v. Baptist Healthcare System, Inc., 150 F.3d 609 (6th Cir.1998), the Court of Appeals for the Sixth Circuit held that summary judgment procedures may no longer be used in the Sixth Circuit in denial of benefits actions under ERISA. In Wilkins, the court of appeals decided a district court should adjudicate an ERISA action as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense. 150 F.3d at 618-19 (Gilman, J., concurring in part and setting out the judgment of the court of appeals on the issue regarding the summary judgment standard).

Accordingly, the Court will decide this matter under the guidelines set forth in Wilkins[1] by rendering findings of fact and conclusions of law based solely upon the

---

[1] The court of appeals' "Suggested Guidelines" are as follows:
1. As to the merits of the action, the district court should conduct a de novo review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
3. . . . the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.

administrative record.  <u>See Eriksen v. Metropolitan Life Ins. Co.</u>, 39 F. Supp. 2d 864 (E.D. Mich. 1999).

III.  Analysis

A.  Standard of Review

The parties agree that the standard of review in this case is whether the denial of benefits was arbitrary and capricious because Liberty Life had discretionary authority to construe and interpret the plan.  <u>See</u> <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989); <u>Miller v. Metropolitan Life Ins. Co.</u>, 925 F.2d 979, 983 (6th Cir. 1991). This standard is the "least demanding form of judicial review."  <u>Administrative Committee of the Sea Ray Employees Stock Ownership and Profit Sharing Plan v. Robinson</u>, 164 F.3d 981, 989 (6th Cir. 1999).  This requires "review of the quality and quantity of the medical evidence and the opinions on both sides of the issues." <u>McDonald v. W.-S. Life Ins. Co.</u>, 347 F.3d 161, 172 (6th Cir.2003).  The plan administrator's decision should be upheld if it is "the result of a deliberate, principled reasoning process" and "supported by substantial evidence."  <u>Glenn v. MetLife</u>, 461 F.3d 660, 666 (6th Cir. 2006), <u>aff'd</u>, <u>Met. Life Ins. Co. v. Glenn</u>, --- U.S. ----, 128 S.Ct. 2343 (2008).  The standard, although deferential, is not "inconsequential."  <u>Moon v. Unum Provident Corp.</u>, 405 F.3d 373, 379 (6th Cir. 2005).  "While a benefits plan may vest discretion in the plan administrator, the federal courts do not sit in review of the administrator's decisions only for the purpose of rubber stamping those decisions."  <u>Id</u>.

Moreover, the Sixth Circuit has made clear that a court is to consider several

---

150 F.3d at 619.

3

factors in reviewing a plan administrator's decision, including the existence of a conflict of interest, the plan administrator's consideration of the Social Security Administration determination, and the quality and quantity of medical evidence and opinions.  Glenn, 461 F.3d at 666.

Here, a conflict of interest exists because Liberty Life was both responsible for reviewing and paying benefits.  The Supreme Court has held that a conflict of interest exists for ERISA purposes where the plan administrator evaluates and pays benefits claims, even when, as here, the administrator is an insurance company and not the beneficiary's employer.  Glenn, 128 S.Ct. at 248-50.  We give more weight to the conflict "where circumstances suggest a higher likelihood that it affected the benefits decision...."  Id. at 2351.  A conflict may affect a benefits decision in several ways.  For example, although the treating physician rule does not apply in ERISA cases, the Supreme Court has acknowledged that "physicians repeatedly retained by benefits plans may have an incentive to make a finding of 'not disabled' in order to save their employers money and preserve their own consulting arrangements."  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 832, (2003).  The Sixth Circuit has observed that when a plan administrator both decides claims and pays benefits, it has a "clear incentive" to contract with consultants who are "inclined to find" that a claimant is not entitled to benefits.  Kalish v. Liberty Mutual/Liberty Life Assurance, 419 F.3d 501, 507 (6th Cir. 2005).  The Court will consider Liberty Life's conflict as a factor in evaluating its decision to deny Maleszewski benefits.

B.  Findings of Fact

The following facts are gleaned from the administrative record.

4

1.  Definition of Disability

The plan defines disability as follows:

"Disability" or "Disabled," with respect to Long Term Disability means:

I.    if the Covered Person is eligible for the 12 Month Own Occupation benefits, Disability or Disabled means that during the Elimination Period and the next 12 months of Disability the Covered Person, as a result of Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation; and

ii.   thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

"Any Occupation" with respect to Classes 4 and 5, means any gainful occupation that the Covered Person is or becomes reasonably fitted by training, education, experience, age, physical and mental capacity.  Gainful occupation means an occupation in which the earnings are:

-equal to or greater than 80% of the Employee's pre-disability income;
-less than 80% of the Employee's average pre-disability income, but higher than the average earnings for the geographic area in which the Employee resides; or
-equal to or greater than the gross benefit.

2.  Maleszewski's Claim

a.  Initial Review

Maleszewski was employed by Comcast as a line maintenance employee.  On or about December 21, 2005 Liberty Life received notice of a claim by Maleszewski for short term disability benefits under Comcast's short term disability plan.  According to the information received by Liberty Life, beginning on or about December 15, 2005, Maleszewski began a disability leave from his position because of degenerative arthritis in his right shoulder.  Following an investigation of Maleszewski's claim, which included receipt of medical information from Dr. Kenneth A. Scott, an orthopedic specialist treating Maleszewski, as well as information concerning Maleszewski's job duties as a

line maintenance employee, Maleszewski was approved for benefits under Comcast's short term disability plan, and he ultimately received benefits for the maximum period applicable under that plan.

Thereafter, Liberty Life investigated Maleszewski's eligibility for LTD benefits.  As noted above, for employees in Maleszewski's class, under the plan, in order to be eligible for benefits, a claimant's condition must prevent him from performing the material duties of his own occupation during the elimination period and the first 12 months of disability.  In order to be eligible to continue receiving benefits after that time, the claimant's condition must prevent him from performing the material and substantial duties of <u>any occupation</u>.

Based upon the medical information received from Dr. Scott and a review of the job duties of Maleszewski's line maintenance position, Liberty Life approved Maleszewski' claim for LTD benefits under the plan effective June 22, 2006.  Liberty Life informed Maleszewski of its decision in a letter dated May 31, 2006.  In its May 31, 2006 letter, Liberty Life also advised Maleszewski that he would receive benefits under the plan in the gross monthly amount of $2,555.59, based on 60% of his pre-disability monthly earnings of $4,259.32.

On December 4, 2006, Liberty Life sent a letter to Maleszewski reminding him that the definition of disability will change to an "any occupation" definition on June 22, 2007.  Liberty Life also advised that it would begin investigating whether he would continue to be eligible for benefits under the new definition.

As part of its investigation, Liberty Life requested Maleszewski to complete and return various forms, including a claimant statement listing his treating physicians and

an activities questionnaire.

On December 11, 2006, Maleszewski completed and returned the requested forms. On the completed activities questionnaire, Maleszewski stated that he was not suffering from any memory or concentration problems.

As part of its investigation, Liberty Life also requested Dr. Scott to submit updated medical records. On February 22, 2007, Dr. Scott's office sent Liberty Life copies of records reflecting his recent office visits with Maleszewski.

After receiving the updated records from Dr. Scott, Liberty Life referred Maleszewski's records to Dr. Anthony Parisi, one of its consulting orthopedic physicians. Liberty Life requested that Dr. Parisi clarify Maleszewski's work capacity and that he contact Dr. Scott in order to determine what restrictions were necessary with respect to Maleszewski's condition.

On March 4, 2007, Dr. Parisi prepared a report following his review of the records. In his report, Dr. Parisi noted he agreed with the diagnosis of advanced degenerative joint disease of the right shoulder, and also that he agreed that Maleszewski would be unable to return to his own occupation because that occupation was heavy duty and frequently involved reaching in all directions and levels. As to whether other restrictions or limitations were necessary, Dr. Parisi stated that he would contact Dr. Scott to obtain additional information, because the file did not contain any recent evaluations with an assessment of range of motion and strength.

On April 10, 2007, Dr. Parisi prepared a supplemental memorandum reflecting the results of his contacts with Dr. Scott and his conclusions. With respect to Dr. Scott, Dr. Parisi noted that he had made several attempts to contact Dr. Scott, and that he

eventually spoke with a person in Dr. Scott's office who advised that she would have Dr. Scott complete an appropriate form and send it to him.  Subsequently, Dr. Parisi received via fax a Certificate of Medical Care that was completed by Dr. Scott on April 4, 2007.  The fax itself is not a part of the administrative record; however, Dr. Parisi quoted verbatim from the fax in his supplemental memorandum.  According to Dr. Parisi, Dr. Scott stated that Maleszewski was "partially incapacitated" and that he was cleared to return to work effective April 1, 2007 with the following restrictions: "Sedentary work only. No overhead work. No lifting over five pounds.  No extension of arms above the shoulder level. No prolonged extension below shoulder level.  No external rotation."

After summarizing the response received from Dr. Scott, Dr. Parisi also expressed his opinion that based on his review of the medical records he believed the restrictions and limitations imposed by Dr. Scott were reasonable.

Following its receipt of the April 10, 2007 supplemental memorandum from Dr. Parisi, Liberty Life requested a vocational rehabilitation consultant complete a transferable skills and labor market study to determine whether there were potential vocational alternatives consistent with Maleszewski's work capacity, work experience, skills and education.

On May 3, 2007, Teresa Marques, a vocational consultant, completed such a study.  The May 3, 2007 study identified a number of sedentary occupations which were consistent with Maleszewski's functional capacities and prior work and education experience, including Maintenance/Service Dispatcher and Business/Badge Security Guard.  Michigan and national average annual wages for the Maintenance/Service

Dispatcher occupation as of 2005 were $35,210 and $33,590 respectively, which were higher than the gross benefits Maleszewski was receiving under the plan.

On May 16, 2007, based on the reports from Dr. Parisi and the vocational study, Liberty Life issued a determination discontinuing Maleszewski's receipt of benefits under the plan effective June 22, 2007, the date of the change in definition of disability from an "own occupation" to an "any occupation" definition. As explained in its determination letter, the basis for Liberty Life's decision was that as of that date Maleszewski did not meet the new definition of disability because his medical condition did not prevent him from performing the material duties of the sedentary occupations identified in the transferable skills analysis and labor market report. Also in its determination letter, Liberty Life summarized the various medical records which had been reviewed during the administrative process, as well as the findings expressed by Dr. Parisi following his review of those records. Liberty Life also quoted the documentation received from Dr. Scott on April 4, 2007, which released Maleszewski to work in a sedentary occupation that did not involve overhead work extension of the arms or lifting in excess of 5 pounds. Liberty Life's determination letter also identified the occupations which had been identified in the labor market report and the compensation associated with such occupations. Finally, Liberty Life's determination letter advised Maleszewski of his right to request a review of Liberty Life's denial of benefits, as well as of the procedure to be followed in connection with any requests for a review.

### b. On Appeal

On November 10, 2007, Liberty Life received a letter from counsel for

Maleszewski appealing from Liberty Life's decision discontinuing Maleszewski's receipt of LTD benefits. In support of the appeal, Maleszewski's counsel submitted (1) a May 31, 2007 treatment note from Dr. Scott; (2) treatment notes from psychiatrist Dr. Leon Rubenfaer who saw Mr. Maleszewski for alleged depression on August 2, 2007, August 23, 2007 and October 22, 2007; (3) a form completed by Dr. Rubenfaer on December 5, 2007 stating that Maleszewski was totally and permanently disabled; (4) results of an MRI performed on Maleszewski's left extremities on July 26, 2007; and (5) a copy of Maleszewski's W-2 form from 2005 listing gross wages of $59,170.94, which Maleszewski's counsel stated were higher than the $51,111.84 salary used by Liberty Life in connection with its initial determination.

Because the information submitted by Maleszewski's attorney with his appeal included additional medical records, Liberty Life's appeal review consultant determined that additional review of those records by independent physicians was required. Accordingly, on November 28, 2007, Liberty Life referred Maleszewski's medical records for an additional peer review which was conducted by Dr. Judith Esman, who is board certified in internal medicine, physical medicine, rehabilitation and pain medicine.

On December 18, 2007, Liberty Life received Dr. Esman's report, dated December 14, 2007. In her report, in response to a question as to whether Maleszewski was suffering from conditions which resulted in work impairment as of June 21, 2007, Dr. Esman expressed an opinion that there was evidence of functional impairment with relation to Maleszewski's right shoulder. With respect to Maleszewski's left shoulder, she further opined that the documentation indicated only mild arthritis with mild restrictions in range of motion. Based on that observation, she found "no evidence

of actual impairment in the left upper extremity."  In addition, in response to a question asking her to list the restrictions and limitations of Maleszewski's work activity, Dr. Esman also wrote that because of the functional impairments with his right shoulder, Maleszewski "is not able to do anything more than sedentary type of activity that would not involve significant abduction or rotation or reaching with the right upper extremity." She further noted that he was not able to do forceful activities or repetitive activities with the right upper extremity, and that an appropriate weight limit for lifting or carrying would be up to five pounds occasionally with the right upper extremity.

Dr. Esman was also requested to comment on the reports that Maleszewski was experiencing memory problems and difficulty concentrating because of his pain.  In that regard, Dr. Esman wrote that Dr. Rubenfaer's August 2, 2007 note indicated difficulty with concentration but did not discuss memory specifically, and that his August 23, 2007 note did not discuss the issue at all.  She also noted that the activities form completed by Maleszewski denied any memory or concentration problems.  Based on these observations, Dr. Esman expressed an overall conclusion that although there was some medical evidence concerning difficulty concentrating, that evidence did not delve into specific issues concerning whether they would prevent Maleszewski from performing and completing tasks, stating:

> Therefore, although the issue of difficulty of concentrating is mentioned, there is no discussion of memory inability to complete tasks due to pain. Therefore, the available medical evidence, although it indicates some difficulty concentrating, does not delve into specific issues regarding performing and completing tasks and whether there is memory impairment. The available medical evidence notes that there is some difficulty concentrating but does not support the idea of memory problems or difficulty performing and completing tasks due to pain that would result in any degree of

impairment

After receiving Dr. Esman's report, Liberty Life requested Dr. Esman to clarify the statement in her report that Maleszewski was not "able to do forceful activities or repetitive activities with the right upper extremity."

On January 9, 2008, Dr. Esman issued an addendum report. Dr. Esman also noted that she had made several unsuccessful attempts to contact Dr. Scott to discuss Maleszewski's condition. In her addendum report, Dr. Esman stated that based upon her review of Maleszewski's medical records, he could perform handling on a frequent basis two-thirds of the time, and that he could do frequent fingering, up to two-thirds of the time.

Liberty Life also requested supplemental information from its vocational rehabilitation department as part of the appeal process. On November 29, 2007, Teresa Marques, the vocational consultant who had prepared the initial vocational study, issued an addendum. The purpose of the addendum was to clarify the rationale for using state and national average earnings in her initial transferable skills analysis report. In her addendum, Marques noted that she had used the average earnings for the Maintenance/Service Dispatcher occupation based on Maleszewski's 26 years of cable system and line technician experience, which would enable him to command average earnings.

An additional transferable skills analysis was prepared by another member of Liberty Life's vocational rehabilitation department on January 17, 2008 which updated the earnings data for the identified occupations to incorporate 2006 earnings information. With respect to the Maintenance/Service Dispatcher occupation, the

updated 2006 average earnings data listed a monthly average wage of $3,058 for that occupation in Michigan, and $2,870 nationally. As was the case with the 2005 average earnings associated with that position, both the national and state average earnings were higher than the $2,555.59 monthly gross benefit Maleszewski was receiving under the plan.

In response to the W-2 wage information submitted by counsel for Maleszewski, Liberty Life contacted Comcast's human resources department to confirm Maleszewski's pre-disability salary. On January 23, 2008, a representative of Comcast's benefits department responded to Liberty Life's inquiry, stating that as of December 15, 2005, Maleszewski's salary was $51,111.84, and that he was not a commissioned employee.

Based on all of the above, on February 5, 2008, Liberty Life issued its determination upholding the denial of LTD benefits to Maleszewski as of June 22, 2007. In its denial letter, Liberty Life summarized the medical records and conclusions upon which its determination was based, including the information received from his treating orthopedic specialist, Dr. Scott, stating that as of April 1, 2007 he was capable of performing sedentary work, with no overhead work, extension of arms above the shoulder level or lifting over five pounds. Liberty Life also summarized the results of the peer review analysis completed during the appeal process by Dr. Esman, which essentially agreed with the restrictions suggested by Dr. Scott, and addressed the issues concerning Maleszewski's alleged memory problems and difficulty with concentration. The letter also summarized the results of the vocational rehabilitation studies completed, and identified the alternative occupations which had

been listed in those reports, including the Maintenance/Service Dispatcher occupation and the compensation associated with that occupation.

As to the compensation issue, in response to the information submitted by counsel for Maleszewski concerning Maleszewski's 2005 W-2 earnings totals, Liberty Life advised that it had reconfirmed with Comcast that the 2005 base salary it was using in calculating Maleszewski's monthly benefit was indeed his base salary as of the December 15, 2005 commencement date of his disability leave.  Based on that correct salary amount and the compensation data for the Maintenance/Service Dispatcher occupation, Liberty Life advised Maleszewski's counsel that the average earnings associated with the dispatcher position exceeded Maleszewski's gross monthly benefit, thereby satisfying the "any occupation" definition requirement that the identified alternative occupation provide earnings "equal to or greater than the gross benefit" of the claimant.

## C.  Conclusions of Law

From a detailed review of the administrative record, as set forth above, the Court is satisfied that Liberty Life's decision to terminate Maleszewski's LTD benefits was not arbitrary or capricious.  The medical and vocational evidence shows that Maleszewski was capable of performing sedentary work and therefore did not meet the definition of disability which required him to be unable to perform work in any occupation for which he was qualified.  Moreover, there is no evidence that Liberty Life's conflict of interest played a role in its decision.

The principal reasons underlying Liberty Life's decision denying Maleszewski's claim for long term disability benefits as of June 22, 2007 are described in the letters

sent by Liberty Life to Maleszewski and his counsel, including the May 16, 2007 letter to

Maleszewski informing him of the initial determination to discontinue his benefits, and

the February 5, 2008 letter sent to Maleszewski's counsel informing him of the adverse

decision concerning Maleszewski's administrative appeal.  In these letters, Liberty Life

provided Maleszewski with a detailed description of the administrative process which

had been completed by Liberty Life, and set forth a detailed analysis of the evidence

and other material relied upon by Liberty Life.  The letters specifically describe the

various peer reviews by physicians, vocational reports, and the conclusions reached in

the various reports.

Liberty Life's determination that Maleszewski did not meet the definition of

disability under the plan is consistent with the evidence developed during the review

process.  This included information from Dr. Scott, Maleszewski's treating orthopedic

specialist, in which he stated that Maleszewski had the physical capacity to work in a

sedentary job which did not involve the use of his right physical extremity.  The

consulting physicians who reviewed Maleszewski's medical records at various times

during the administrative review agreed with Dr. Scott.  These various medical opinions

provide a rational basis for Liberty Life's decision to discontinue Maleszewski's receipt

of benefits on the basis of its conclusion that he did not meet the plan's definition of

disability as of June 22, 2007 when the definition changed to an "any occupation"

definition.  See Whitaker v. Hartford Life & Accident Ins. Co., 404 F.3d 947, 950 (6th Cir.

2005) (holding that plan administrator did not act arbitrarily or capriciously in denying

claim after receiving peer review reports from consulting physicians that claimant was

able to return to work).

Liberty Life's decision is also consistent with the results of the labor market studies and vocational reports it received during the administrative review and appeal process, which specifically identified sedentary occupations which could be performed by Maleszewski consistent with the upper extremity limitations imposed by Dr. Scott. One of the alternate occupations identified in those labor market surveys was the Maintenance/Service Dispatcher occupation, with average 2006 monthly earnings of $3,058 in Michigan and $2,870 nationwide. Both of those average earning amounts are higher than the $2,555 monthly gross benefit received by Maleszewski under the plan. Accordingly, the earnings requirement for the "any occupation" definition under the policy was met.

### D. Maleszewski's Arguments

Maleszewski raises several arguments as to why the decision was arbitrary and capricious, which the Court addresses in turn.

First, Maleszewski says that Dr. Scott expressed the view that Maleszewski was totally incapacitated from February 8, 2007 to August 6, 2007. As Liberty Life points out, Dr. Scott's opinion was made during the "own occupation" period of disability, when everyone, including Liberty Life, agreed that Maleszewski was incapable of performing the duties of his own line maintenance position. Dr. Scott's opinion does not support the view that Maleszewski was incapable of returning to work in a sedentary occupation. Indeed, Dr. Scott's notes from as early as February, 2006, show that Dr. Scott believed Maleszewski was capable of working in a sedentary occupation which did not involve use of his right upper extremity. A May 15, 2006 office visit note states that Maleszewski should "avoid any job that involves lifting the arm overhead or by

manipulation of the right hand" and that he was "hopeful that work would find him some type of retraining so that he can obtain gainful employment."  A July 20, 2006 note states that Maleszewski was capable of participating in a vocational rehabilitation program, as long as he avoided overhead work.  These notes are consistent with the view that although Dr. Scott did not think Maleszewski was capable of returning to his heavy duty line maintenance position, he believed that Maleszewski was able to work in a sedentary occupation that did not involve overhead work or lifting.  Moreover, as described above, in April, 2007, Dr. Scott completed and faxed another certification of medical care on April 4, 2007, stating that claimant was "partially incapacitated" and was cleared to return to work on April 1, 2007 in a sedentary occupation, with restrictions.  At no point in the administrative process did Dr. Scott contradict the opinions he expressed to Liberty Life on April 4, 2007, and no medical records were ever submitted by Maleszewski in connection with his appeal that were inconsistent with these views expressed by Dr. Scott.  Thus, this argument fails.

Maleszewski also argues that Liberty Life's decision was arbitrary and capricious because it did not use the correct salary in determining whether he met the "any occupation" definition of disability.  He says that salary used by Liberty Life in the administrative review process was lower than his actual pre-disability earnings as reflected in his 2005 W-2 form, showing total earnings for that year in the amount of $59,170.94.  Based on that higher amount, Maleszewski says that his gross benefit under the plan should be $2,958.54, which is slightly higher than the average earnings associated with the Maintenance/Service Dispatcher occupation.

This argument is misguided.  Liberty Life correctly calculated Maleszewski's

monthly gross benefit under the plan using the annual salary of $51,111.84.  Liberty Life confirmed this amount with Comcast who informed Liberty Life that Maleszewski's "salary on 12/15/2005 was $51,111.84 and that he "was not a commissioned employee."  As Liberty Life points out, to the extent the W-2 form submitted by Maleszewski's counsel shows higher earnings for 2005, those amounts may reflect his receipt of overtime wages during 2005.  Under the plan, overtime earnings are not included in a covered person's basic monthly earnings for purposes of calculating the gross disability benefit.  Accordingly, the plan's definition of "basic monthly earnings," coupled with the reconfirmed information received from Comcast during the administrative appeal, confirms that Liberty Life was correctly using Maleszewski's base salary of $51,111.84.  That annual salary yields a gross monthly salary of $4,259.32 which, in turn, yields a gross monthly benefit of $2,555.59 based on a 60% benefit percentage.  Because that gross monthly benefit is lower than the average earnings for the identified Maintenance/Service Dispatcher occupation, the identified occupation meets the earnings requirements contained in the "any occupation" definition of disability under the plan.

Maleszewski further argues that Liberty Life erred in using the average state and national earnings data for the Maintenance/Service Dispatcher Occupation, rather than entry level earnings levels.  Teresa Marques, the vocational consultant who prepared the initial May 3, 2007 transferable skills analysis and labor market report, specifically explained why she believed it was appropriate to use the average earnings associated with the identified occupation:

Average Maintenance/Service Dispatcher earnings were

determined based on Mr. Maleszewski's 26 years of cable
system/line technical experience with intricate knowledge of
technical expertise and time frames required for specific
repair/installs as well as experience in receiving end-dispatching,
receiving work orders, coordinating/scheduling services and
documenting provided services, which are all tasks performed as a
dispatcher.  Resultantly, Mr. Maleszewski would be able to
command average earnings.

In a later report prepared to identify 2006 earnings, Jason Miller, another

vocational case manager, stated that he agreed with Marques' rationale that

"Maleszewski can glean average wages for the occupations identified."  Based upon

Maleszewski's years of experience in the industry and the opinions received from two

vocational consultants, Liberty Life acted correctly in basing its decision on the average

earnings associated with the identified alternate occupation.

Maleszewski, however, points to statements included in an e-mail from another

vocational rehabilitation specialist, David Carey, suggesting that he might qualify for

wages in the lower end of the range as provided.  First, this note was prepared in July,

2006, at an early stage of the administrative review, prior to receipt of all of the relevant

information necessary to complete a transferable skills analysis study.  Second, Carey

was not completing a transferable skills analysis study, but instead was pursuing

preliminary discussions about Maleszewski's potential participation in a vocational

rehabilitation plan.  Thus, the work performed by Carey in July, 2006 was for a

completely different purpose than the more definitive and complete transferable skills

study and labor market study completed by Marques in May, 2007.  Finally, the

suggestion that Maleszewski could only command entry level wages despite his more

than 26 years of experience in the industry is simply inconsistent with reality – the

Maintenance/Service Dispatcher occupation was one closely related to Maleszewski's prior work experience, which would enable him to obtain average earnings in the identified alternate occupation, rather than entry level earnings. It was not unreasonable for Liberty Life to conclude that Maleszewski could command an average, as opposed to an entry level, salary.

Finally, Maleszewski argues that Liberty Life did not properly consider his psychological condition as preventing him from returning to work. During his appeal, Maleszewski submitted records from Dr. Rubenfaer concerning his depression. These records consisted of office notes on August 2, 2007, August 23, 2007 and October 22, 2007. Dr. Rubenfaer also submitted a form which he completed on December 5, 2007 stating that Maleszewski was "totally and permanently disabled," and had been disabled since 2006.

Maleszewski says that Liberty Life acted arbitrarily and capriciously in rejecting these opinions concerning his psychological condition. The Court disagrees. First, Maleszewski's benefits were terminated effective June 22, 2007 at the time the change in definition of disability occurred. As such, the relevant inquiry is Maleszewski's condition as of that date, not some later date. Moreover, prior to visiting Dr. Rubenfaer on August 2, 2007, the administrative record contains no mention of any treatment received by Maleszewski for alleged depression or emotional problems. Indeed, in December, 2006, Maleszewski completed an activities questionnaire in which he said he was not suffering from any memory or concentration problems. The lack of any records reflecting treatment for a psychological or emotional problem prior to the time when his receipt of benefits under the plan were terminated shows a likelihood that any

alleged mental condition was not disabling.

Moreover, on the December 5, 2007 form, Dr. Rubenfaer provides no detail as to why he considered Mr. Maleszewski's depression condition to render him totally and permanently disabled. Neither that form nor the earlier progress notes from August 2, 2007, August 23, 2007 and October 22, 2007 contain any detail which would support a finding that Maleszewski's depression was so severe and debilitating that it rendered him incapable of working. The form also states that Dr. Rubenfaer first saw Maleszewski on August 2, 2007, yet he opines that Maleszewski has been totally disabled from 2006 to the present. Other than Dr. Rubenfaer's bare assertions, there is no objective medical evidence to support such a finding. In these circumstances, an opinion by a treating physician that a patient is disabled without explanation of how the physician arrived at that determination is entitled to little weight. See Eastover Mining Co. v. Williams, 338 F.3d 501, 513 (6th Cir. 2003). See also Boone v. Liberty Life Assurance Company of Boston, 2005 U.S. App. LEXIS 28405 (6th Cir. Dec. 20, 2005) (upholding administrative determination discontinuing benefits notwithstanding opinions from treating physicians that plaintiff was unable to work, based upon failure of claimant or physicians to submit objective medical evidence in support of disability, as required by plan).

Finally, Dr. Esman addressed the issue of whether any psychological or emotional problem would prevent Maleszewski from sufficiently concentrating in order to perform work on a full time basis, and rejected that proposition. Although Dr. Esman is not a specialist in psychology, she has the qualifications to comment on the absence any clinical or objective evidence substantiating the general opinions expressed by Dr.

Rubenfaer concerning Maleszewski's work capacity. Moreover, the fact that Dr. Esman may not have reviewed the form by Dr. Rubenfaer does not change this result. Dr. Esman reviewed the office notes; the form, as explained above, contains no clinical analysis of Maleszewski's depression and ability to work.

In sum, the administrative record does not support Maleszewski's argument that he was incapable of performing full time work because of emotional or psychological problems. That argument was never raised by him prior to the initial denial of his claim, and he never received any treatments for such conditions until, at the earliest, August, 2007, several months after the effective date of the discontinuation of his receipt of benefits.

IV. Conclusion

For the reasons stated above, having conducted a thorough review of the administrative record, the Court finds no evidence that Liberty Life's decision denying Maleszewski's claim for benefits was arbitrary or capricious. Indeed, it was the result of a principled, deliberative reasoning process. Accordingly, Maleszewski's motion for entry of judgment is DENIED and Liberty Life's motion for entry of judgment is GRANTED. This case is DISMISSED.

SO ORDERED.


Dated: April 8, 2010        S/Avern Cohn_____
                AVERN COHN
                UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 8, 2010, by electronic and/or ordinary mail.

        S/Julie Owens_____
                Case Manager, (313) 234-5160